Feinman and Gische, JJ.,
concur in part and dissent in part in a memorandum by Gische, J., as follows: I write separately because while I agree with the majority that petitioner was not entitled to a credit for certain child support payments collected by the City Human Resources Administration (HRA) on her behalf for the period encompassing September 2005 through January 2007, I do not believe that petitioner’s assignment of child support is permanent, lasting for the duration of the family’s public assistance case, even for a period of time when the subject child (Michael Jackson) is not a part of that household. Thus, I would modify the agency’s determination to the extent of remanding the matter back for a recalculation of benefits paid for the family to exclude those periods of time after 2007 when Michael was not statutorily considered part of petitioner’s family. I would also credit petitioner for $1,588.20, which represents the monies HRA received from the Social Security Administration (SSA) on her own behalf.
Petitioner brought this CPLR article 78 petition challenging respondents’ determination that she is not entitled to share in any of the outstanding child support arrears owed on behalf of her son Michael. HRA claims that because the child support owed exceeds the assistance paid to the family, petitioner is not entitled to any of the outstanding arrears, if and when they are collected. According to respondents, HRA made cash assistance payments to the family totaling $112,588.83 from the date petitioner first applied for public assistance in 1989 through August 1, 2011.
Petitioner also claims that respondents failed to properly credit her for the $1,588.20 that HRA received from SSA when she herself qualified for SSI benefits. Petitioner applied for public assistance in December 1989, and when Michael was born in May 1990, petitioner also began to receive public assistance on his behalf. Although petitioner has another, younger child born *501 in 2000 (J.S.), for whom she also obtained public assistance, the children have different fathers and only the child support collected or due by Michael’s father is the subject of this summary proceeding.
Since 2001, petitioner has been receiving public assistance under the Safety Net Assistance Program (SNA). Pursuant to Social Services Law § 131-c (1), when an application for public assistance is made on behalf of a minor, the other minor siblings residing in the same dwelling with that minor are required to also apply “for assistance and be included in the household for purposes of determining eligibility and grant amounts, if such individuals reside in the same dwelling unit as the minor applying for assistance.” With respect to budgeting, “[a]ny income of or available for such parents, brothers and sisters which is not disregarded under subdivision eight of section one hundred thirty-one-a of this article, shall be considered available to such household” (§ 131-c [1]). “The provisions of [section 131-c (1)] shall not apply to individuals who are recipients of federal supplemental security income benefits or additional state payments pursuant to [chapter 55 of the Social Services Law]” (id.). As a condition of receiving SNA, the applicant must apply for federal SSI benefits if it “reasonably appears” he or she may be qualified for such benefits (Social Services Law § 158 [2]; 18 NYCRR 370.2 [b] [5] [ii]). Social Services Law § 158 (5) provides that an application for “safety net assistance [SNA] shall operate as an assignment to the state and [HRA] of any rights to support that accrue during the period that a family receives [SNA].” It is undisputed that petitioner complied with each of these requirements, first by executing an assignment of her right to child support from Michael’s father and then by applying for SSI on Michael’s behalf in August 2005.
While Michael’s SSI application was being processed, HRA continued to pay benefits on his behalf. Those interim assistance payments were terminated by HRA in January 2007 when Michael was approved for SSI in January 2007 with benefits retroactive to September 2005. HRA recouped the sum of $1,232.50 from Michael’s initial SSI payment, as it was permitted to do under Social Services Law § 158 (5). During that same time, HRA also collected child support from Michael’s father. Once Michael began receiving SSI, he was no longer eligible for public assistance (Social Services Law § 158 [2]) and his case was closed on January 19, 2007. Petitioner began receiving child support payments directly from Michael’s father via income execution once Michael’s case was closed and she continued collecting those payments until Michael turned 21 in May 2011. At *502 that time an order was entered in Family Court ending Michael’s father’s prospective support obligation, without prejudice to arrears. Petitioner’s own public assistance case was closed in February 2007 and she later reapplied for SNA benefits in June 2009. She continued to receive SNA until the end of December 2011 when she became eligible for SSI, retroactive to September 2010.
Petitioner contends that she is entitled to the child support payments HRA collected during the period of September 2005 through January 2007 because HRA recouped its interim assistance payments from Michael’s first SSI check. She characterizes this as “double dipping” because her assignment of child support terminated in September 2005 when Michael became eligible for SSI, not when his case was closed in January 2007. Since HRA is not limited or prohibited by law or regulation from enforcing petitioner’s assignment of child support simply because it has also obtained reimbursement from SSA for the same period of time, I agree with the majority, that respondents’ determination as to the period encompassing September 2005 through January 2007 has a rational basis and petitioner has no valid claim to the child support that HRA collected on Michael’s behalf through January 2007. There was no “double dipping” by HRA in collecting monies from both sources because HRA’s recoupment of monies from these independent sources did not exceed the amount of unreimbursed past public assistance. The monies HRA received from Michael’s initial SSI check and his father’s child support payments were properly credited towards the public assistance provided to the petitioner’s family through January 2007 while Michael was still eligible for public assistance and considered a member of that household. The interim assistance that HRA provided that household included money to meet Michael’s basic needs and those needs were factored into the budget for its members during that time (18 NYCRR 353.2 [a] [1] [i]).
The situation is different, however, after January 2007 when Michael began receiving SSI benefits and his case was closed. It is at this critical juncture where I depart from the majority’s analysis and dissent with their interpretation and application of these and other applicable laws.
Pursuant to state regulations, “[flor budgetary purposes, the number of persons in the public assistance household are those persons who the applicant, recipient or a representative indicates wish to receive public assistance and who reside together in the same dwelling unit” (18 NYCRR 352.30 [a]). However, “children and adults residing with an SSI beneficiary *503 must be considered a separate household from the SSI beneficiary with whom they live” (18 NYCRR 352.2 [b]). Someone receiving federal SSI payments “shall not be eligible for safety net assistance” (Social Services Law § 158 [2]). “Parents and siblings who are SSI recipients” and others who are ineligible for public assistance “are not required to apply [for public assistance] in accordance with [18 NYCRR 352.30 (a)]” (18 NYCRR 352.30 [a]).
Notwithstanding these statutes and regulations, the majority agrees with respondents’ determination that petitioner’s assignment of child support payments to them did not expire when Michael’s case closed, because petitioner’s assignment of rights to Michael’s child support is permanent, lasting for the duration of the family’s case, regardless of whether Michael’s case closed sooner. Phrased differently, HRA argues that the assignment extends not just to current support payments collected while Michael received public assistance, but continued while the rest of the household he was once a part of received public assistance.
Respondents rely on the assignment of support language found in Social Services Law § 158 (5) and 18 NYCRR 347.13 (f), the latter of which provides that “[w]hen a family ceases receiving [public assistance], the assignment of support rights terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment.” According to respondents, “family” means all the members of the petitioner’s family, even though statutorily Michael was a separate “household” once he began receiving SSL Although the majority points out that no excess support payment is presently owed to petitioner because HRA’s payments “to petitioner and her family” exceeded the amount of child support collected when Michael’s case closed, HRA’s desk review, which is a final reconciliation, does not accurately reflect that once it recoups the child support attributable to Michael’s support while he was statutorily considered a part of that household, any excess is due to petitioner.
Although petitioner and her younger son, J.S., continued to receive public assistance after Michael became eligible for SSI, and although petitioner reapplied for public assistance in June 2009, HRA notified her in June 2009 that the benefits it had approved were only for her and J.S. There is no indication that petitioner received SNA benefits on Michael’s behalf after June 2009. In fact, although petitioner and both children were found qualified for and received food stamps, HRA specifically denied Michael benefits on the basis that his “SSI payment amount *504 exceeds the individual’s budget,” referencing 18 NYCRR 352.1 and 352.29 (b), the latter of which pertains to budget deficits.
The payment worksheets that respondents relied upon in performing their desk reviews and in support of their determination are uninformative and inconclusive, in large part because they do not differentiate between the benefits paid to the family when Michael was a part of petitioner’s household and receiving public assistance and subsequently when he became his own separate household and his case was closed. According to respondents, petitioner and J.S. received benefits totaling $10,704.42 between June 2009 and August 2011 and that sum is included in respondents’ computation of unreimbursed public assistance. Although there was a brief two month period in 2009 when Michael apparently either lost or had his SSI benefits reduced and respondents provided him with temporary public assistance, Michael was a separate household from his mother and brother’s household once he began receiving SSI. The benefits paid to petitioner’s family are lumped together and the family treated as a single household unit for the entire period of time under review encompassing 1989 to 2011. The worksheet also does not appear to credit petitioner for the sum of $1,588.20 that HRA recovered from petitioner’s initial SSI check when she qualified for her own SSI benefits effective December 2011, retroactive to September 2010.
Respondents’ findings are arbitrary and capricious and erroneous as a matter of law to the extent that they seek to retain child support paid for an SSI recipient whose needs were not included in the public assistance grant once his cased closed in January 2007 (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). Upon examination of the applicable laws and regulations, it is evident that the term “family” as used in part 347 of the Department of Social Services Regulations has to mean the child or children for whom there is a support order allowing HRA to collect the child support that otherwise would have gone to the custodial parent who has assigned his or her rights to receive such support directly. Otherwise reference to “paternity” and “enforcement of child support” in this regulation would be meaningless. The terms “family” and “families” are also used throughout Social Services Law § 131 in connection with eligibility for benefits based upon the size of the family.
Respondents’ determination, that they are entitled to all of the outstanding child support and that petitioner’s assignment of child support is permanent, lasting for the duration of the *505 family’s public assistance case, even for a period of time when Michael was not a part of that household, is without a rational basis and their interpretation of the applicable laws and regulations is inconsistent with their mandate that once a recipient qualifies for SSI, that person is ineligible for public assistance. Since HRA’s calculation of the recoupment amounts it is due included monies paid to petitioner’s household at a time when Michael was not a recipient of benefits, I would remand this matter for a recalculation of the unreimbursed assistance amount so as to involve only the period of time Michael received public assistance as part of petitioner’s household (Matter of Police Benevolent Assn. of N.Y. State Troopers v Vacco, 253 AD2d 920, 921 [3d Dept 1998] [“We unquestionably have the right under CPLR 7806 to remit a matter to an administrative agency when further agency action is necessary to cure deficiencies in the record”], lv denied 92 NY2d 818 [1998]; see also Gersten v 56 7th Ave. LLC, 88 AD3d 189, 204 [1st Dept 2011] [“remand may be appropriate where the agency has made the type of substantial error that constitutes an ‘irregularity in vital matters’ ”]).